UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| PETRA TORREZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-932 |
| ) | |
| v. ) | Honorable Janet T. Neff |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On February 2, 2004, plaintiff filed her consolidated application for DIB and SSI benefits (A.R 52-55), claiming an April 15, 2000 onset of disability.[1] Plaintiff's disability insured status expired on December 31, 2000. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before December 31, 2000. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's claims for benefits were denied on initial review. On June 8, 2006, plaintiff received a hearing before an administrative law judge at which plaintiff was represented by counsel. (A.R. 666-711). On January 25, 2007, the ALJ issued a decision finding

---

[1] SSI benefits are not awarded retroactively for the months before and the month in which an application for benefits is filed. 20 C.F.R. § 416.335; *see Branham v. Commissioner*, 191 F. App'x 135, 137 (3d Cir. 2006); *Baldwin v. Barnhart*, 167 F. App'x 49, 51 (10th Cir. 2006). Therefore, the question before the Commissioner on plaintiff's SSI claim was whether plaintiff was disabled in or after March 2004, not plaintiff's alleged onset date of April 15, 2000.

that plaintiff was not entitled to DIB or SSI benefits. (A.R. 17-24). On July 23, 2007, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On September 20, 2007, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. The two issues raised by plaintiff are as follows:

I. DID THE ADMINISTRATIVE LAW JUDGE FAIL TO COMPLY WITH 20 C.F.R. § 404.1527 [AND] SOCIAL SECURITY RULING 96-2P IN NOT ACCORDING ADEQUATE WEIGHT TO THE OPINION OF THE CLAIMANT'S TREATING PHYSICIAN?

II. DID THE ADMINISTRATIVE LAW JUDGE FAIL TO PROPERLY EVALUATE THE CLAIMANT'S DIAGNOSED FIBROMYALGIA AND THE COMPLAINTS ARISING THEREFROM IN ACCORDANCE WITH *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817 (6th Cir. 1988)?

(Statement of Issues, Plaintiff's Brief at 8, docket # 12). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v.*

*Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of April 15, 2000, through December 31, 2000, but not thereafter. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had the following severe impairments:

> [R]epetitive stress/overuse injuries of the hand and wrist since 1998 (worker's compensation), multiple tendon surgeries (right and left hand and wrist area) since

>2001(Exhibit 9F), mild left carpal tunnel syndrome since 1999, carpal tunnel release of the left wrist in November 2001 (Exhibit 9F) and De Quervain/trigger thumb surgeries in 2001 of the right and left hand (Exhibit 10F), fibromyalgia since 1998, mixed connective tissue disease since July 1999 (Exhibit 12F/129), and chronic mechanical lower back pain since 1996 as a result of mild L5-S1 degenerative disc disease (20 CFR 404.1520(c)).

(A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ found that the plaintiff's testimony regarding her subjective complaints was not fully credible:

>The claimant testified that she experiences constant pain all over her body, from the neck all the way to her hands, including back pain, hip pain, and pain from the hip to the knee. She also said that she experiences cold and numbness in the hands [and] feet and cannot feel some of her toes. She first experienced pain with her hands a long time ago. She had pain in the head, neck and knee when working for Compulink. She had two surgeries on her hands above the wrist because of hand pain. After her second surgery, her condition got better but she is still having some problems with her hands, including cramping and constant pain in her hands [which has] not improved with medications. With respect to her functional limitations, she drops things, cannot hold things with her hands, and has trouble threading a needle. She has worn splints/braces. She does not have insurance to go to doctor's [sic] visits. She said that she pays her doctor cash for visits. She could not articulate initially what might prevent her from performing a job when all work was done in a seated position without the use of hands and wrists. She later stated that her tailbone area hurts and that her hip bothers her. The discomfort is relieved if she stands up. She gets tired and sleepy, has lack of energy, and has the desire to go to sleep.
>
>The claimant's credibility is rather poor because her allegations are not generally supported by the record. With respect to her activities of daily living, she sleeps a lot and sometimes just stays in her pajamas after she wakes. She hardly visits anybody, talks with her husband during the day, wants people to stay away from her, isolates herself and goes to church every Sunday. It was noted that the claimant exhibited a "little bit of embellishment" in her symptom description and poor effort (Exhibit 12F/7). Despite her many complaints of hand pain, a doctor conducting an examination relating to a motor vehicle accident characterized the claimant's grip strength as "only a little bit decreased bilaterally and symmetrically" due to a history of carpal tunnel syndrome and noted that the claimant's biceps and triceps strength was normal in October 2005 (Exhibit 12F/8). Her straight-leg raising was also negative bilaterally. Thus, these relatively minor clinical findings are inconsistent with the claimant's allegations of disability.
>
>After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but the

> claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The symptoms seem magnified and disproportionate with the objective evidence. Likewise, her testimony conflicts with some of the statements she made to examiners and other treating sources.

(A.R. 21).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in and eight-hour workday, and sit six hours in an eight-hour workday. From time to time, or at least occasionally, she may do bending, stooping, crawling, kneeling, reaching, handling, and fingering. She must avoid exposure to extreme heat or cold. She is precluded from work around dangerous moving machinery or working at unprotected heights. She can perform work at a stress level of four to five (assuming that a stress level of one is associated with a work of a night dishwasher and a stress level of ten is associated with the work of an air traffic controller).

(A.R. 20).

The ALJ found that the extreme functional restrictions proffered by plaintiff's treating rheumatologist, Niti Thakur, M.D., were not well-supported and were inconsistent with the record as a whole:

> Niti Thakur, M.D., the claimant's treating rheumatologist, opined in May 2006 that the claimant could perform an extremely restricted range of less than sedentary work. (Exhibit 7F/1-4 [(A.R. 335-38)]).
>
> Jan Wu, M.D., the claimant's treating family practice physician, in an undated form stated that the claimant was not then incapacitated and might need intermittent time off to see the doctor, possibly on a monthly basis indefinitely, due to her chronic condition (Exhibit 12F/14-15 [(A.R. 476-77)]).
>
> Dr. Brown opined in October 2006 that the claimant could perform a wide range of light work (Exhibit 1[2]F [(A.R. 616-23)]). In contrast, Dr. Thakur's opinion is given limited weight because [her] extremely limiting assessment is controverted by Dr. Brown's opinion and is inconsistent with Dr. Thakur's own progress notes. For instance, Dr. Thakur noted in October 2005 that the claimant's symptoms were stable but then opined that the claimant

>could not even sit for less than six hours. Moreover, Dr. Thakur completed a check-the-box form without further elaboration in a written narrative. Thus, this opinion is not persuasive.
>
>Dr. Wu did not specifically provide a functional capacity assessment. However, she did note that the claimant was not incapacitated and that she might need intermittent time off for doctor's appointments. The general tenor of her opinion seems to suggest that the claimant is not very limited.
>
>Dr. Brown's opinion is accorded the most weight. First, he had access to the entire evidence of record . . . . Second, he is a board-certified rheumatologist, and his specialty is especially relevant in this case. Third, he cited ample records to support his opinion. His opinion is consistent with my review of the entire record, including the claimant's testimony. Thus, his opinion is persuasive.

(A.R. 22). The ALJ found that plaintiff was unable to perform her past relevant work. Plaintiff was forty-seven years old as of the date of her alleged onset of disability and the date her disability insured status expired. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. On and after February 7, 2003, plaintiff was classified as a person closely approaching advanced age. 20 C.F.R. § 416.963(d). The ALJ found that plaintiff has at least a high school education and can communicate in English. The ALJ found that the transferability of job skills was not material to the determination of disability. The ALJ then turned to the sworn interrogatory responses provided by a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were approximately 55,300 jobs in the national economy that the hypothetical person would be capable of performing. (A.R. 132-33). The ALJ held that this constituted a significant number of jobs. Using Rules 202.14 and 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 17-24).

**1.**

Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527 and SSR 96-2p when he failed to give adequate weight to the opinions of plaintiff's treating rheumatologist Niti Thakur, M.D. (Plaintiff's Brief at 11). Unfortunately, plaintiff's brief fails to specify the opinion or opinions expressed by Dr. Thakur that the ALJ failed to accord sufficient deference. (*Id.* at 11-15). Plaintiff states, "Dr. Thakur treated Ms. Torrez for a number of years and most of her chart has been included as part of the evidence." (*Id.* at 11). Plaintiff's blunderbuss approach of referring to "most of" a treating physician's records in a case involving an administrative record in excess of 700 pages is not helpful. On page twelve of her brief, plaintiff argues that the ALJ failed to "accord appropriate weight to the findings of the treating physician," without identifying the physician's "findings." (*Id.* at 12). Plaintiff then states, "While some of the evidence is after the last met date, it is included to demonstrate where this condition is going and that it a developing and continuing medical process." (*Id.* at 12). This extremely cryptic statement appears to be plaintiff's acknowledgment that a large portion of the evidence from Dr. Thakur is dated after the December 31, 2000 expiration of plaintiff's disability insured status. It was plaintiff's burden on her claim for DIB benefits to submit evidence establishing that she was disabled on or before December 31, 2000. *See Moon v. Sullivan*, 923 F.2d at 1182. Documents generated after expiration of plaintiff's disability insured status are "minimally probative," and are considered only to the extent that they illuminate a claimant's health before the expiration of her insured status. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Strong v. Social Security Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Commissioner*, No. 07-1130, 2008 WL 2229848, at * 2 (6th Cir. May 30, 2008)("A physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination."); *Turner v. Commissioner*, 267 F. App'x 456, 461 (6th Cir. 2008). A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, No. 07-6111, 2008 WL 2564784, at * 4 (6th Cir. June 25, 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

The administrative record shows that Dr. Thakur first examined plaintiff on October 7, 1998. (A.R. 382). Plaintiff stated that she was working for Compulink Loan Services. Plaintiff's primary complaint was low back pain. Upon examination, plaintiff had no gross motor or sensory deficits. Her reflexes were normal in her upper and lower extremities. Her muscle strength "was 5/5 in her upper and lower extremities." Plaintiff's gait was normal. Her elbows, shoulders, cervical and lumbar spine, hips and knees all had a full range of motion. Dr. Thakur found that plaintiff had sixteen fibrocystic tender points. She found that plaintiff had fibromyalgia syndrome and provided

plaintiff with some literature and a nutritional program. Dr. Thakur also recommended regular, low impact, aerobic exercise. (A.R. 382-84). Dr. Thakur treated plaintiff on other occasions before plaintiff's alleged onset of disability. (A.R. 554-64, 567-68, 584-93).

Plaintiff claimed an April 15, 2000 onset of disability. On September 14, 2000 George Poletes, M.D., performed a surgical release of plaintiff's "right trigger thumb." (A.R. 141-42, 431-32). On January 23, 2001, Dr. Poletes performed a release of plaintiff's left trigger thumb. (A.R. 143-46, 430). Dr. Poletes did not impose any long-term restrictions on plaintiff's use of her hands. (A.R. 428-29).

On January 30, 2001, plaintiff returned to Dr. Thakur for treatment of a mixed connective tissue disorder. (A.R. 332). On May 29, 2001 and August 17, 2001, Dr. Thakur described plaintiff's condition as "somewhat symptomatic." (A.R. 310, 322).

On September 19, 2001, Edward D. Lanigan, M.D., Associate Professor at Michigan State University's Department of Surgery, performed a "release of the right trigger thumb and repair of the right De Quervain's tendonitis." (A.R. 218-19, 418-19, 422, 640-42, 646). Approximately two months later, on November 16, 2001, Dr. Lanigan performed a left carpal tunnel release, release of the left trigger thumb, and release of the left De Quervain's tendonitis. (A.R. 231, 416-17, 636-37). Dr. Lanigan did not impose any long-term restrictions on plaintiff's use of her hands. (A.R. 405-11, 427, 424-30).

On March 19, 2002, months after plaintiff's November 2001 surgery, plaintiff reported to Dr. Thakur that she was experiencing pain in the small joints of her hand. Dr. Thakur recommended that plaintiff "stay off work at this point," and noted that plaintiff was pursuing a worker's compensation claim. (A.R. 296). On September 13, 2002, Dr. Thakur expressed her

doubts regarding whether plaintiff could return to work at Compulink Loan Services. She wrote that plaintiff had been given work restrictions in the past, and that Compulink had not honored those restrictions. (A.R. 288).

On January 1, 2003, plaintiff told Dr. Thakur that she was experiencing back pain and arthralgias and tenderness in multiple joints. (A.R. 276). On June 5, 2003, plaintiff stated that she had been "somewhat symptomatic" since her January examination. Plaintiff stated that she noticed a recent increase in arthralgias, but had not experienced significant swelling in her joints. Dr. Thakur adjusted plaintiff's medications. (A.R. 379). On October 3, 2003, plaintiff related that her symptoms had been "worse lately" and that the pain in her muscles was "interfering with what she [did] during the day." (A.R. 257, 376). On December 15, 2003, Dr. Thakur wrote a letter addressed to "To Whom It May Concern," expressing her opinion that it would be very difficult for plaintiff "to engage in any regular gainful employment." (A.R. 256).

On January 8, 2004, Dr. Thakur noted that plaintiff had multiple tender points from fibromyalgia and continued to complain of low back pain and fatigue. (A.R. 354, 373). Plaintiff stated that she would be in Texas from January through April 2004. (A.R. 253, 356). She returned to Michigan in early May 2004. (A.R. 246). On May 10, 2004, Dr. Thakur examined plaintiff in Michigan. Dr. Thakur found that plaintiff's muscles were within normal limits, with no tenderness, weakness, or muscle atrophy. Her grip strength was 70 pounds on the right and 54 pounds on the left. A neurological examination returned normal results. Plaintiff had a reduced range of motion in her lumbar spine, but she had a normal range of motion in her cervical spine, shoulders, hips, knees, ankles, elbows, hands and wrists. (A.R. 371). Plaintiff stated that she continued to experience low back pain, although her pain had decreased with recent weight loss. Dr. Thakur

recommended stretching and strengthening exercises. (A.R. 244, 351, 370). On May 13, 2004, Dr. Thakur completed a form in support of plaintiff's claim for long-term disability benefits. Despite the objective findings recorded only a few days earlier, Dr. Thakur opined that plaintiff should "never" lift and carry one-to-ten pounds and should "never" bend, kneel, crawl, climb stairs, or reach above the shoulder. On another page Dr. Thakur wrote that plaintiff should not perform work requiring her to sit or stand for more than ten to fifteen minutes, lift more than five pounds, or perform repetitive work with her hands. (A.R. 242-43).

Plaintiff returned to Texas in July and early August of 2004. (A.R. 86). On September 21, 2004, Dr. Thakur examined plaintiff in Michigan. Dr. Thakur reported that plaintiff continued to be "somewhat symptomatic" with her mixed connective tissue disease and arthralgias in multiple joints. (A.R. 367).

On January 6, 2005, Dr. Thakur wrote that plaintiff "still gets arthralgias." (A.R. 364). Neurological, muscle, and range of motion tests conducted on June 30, 2005 all returned normal results, other than a reduction in plaintiff's lumbar spine range of motion. Plaintiff's grip strength was seventy pounds on the right and sixty pounds on the left. (A.R. 363). Dr. Thakur stated that plaintiff continued to be "somewhat symptomatic." (A.R. 361). Plaintiff stated that she experienced low back pain, pain in the small joints of her hands, occasional pain in her left knee, and a recent increase in right knee pain. (A.R. 361). On October 11, 2005, plaintiff reported that she had recently been involved in a car accident. (A.R. 360). Dr. Thakur described plaintiff's symptoms as "stable." (A.R. 358). Plaintiff had no active synovitis in her peripheral joints. (A.R. 358). Plaintiff reported increased muscle pain and low back pain since her last visit. (A.R. 339, 358). On October 25, 2005, plaintiff's treating family physician Dr. Wu submitted an attending physician's report to

plaintiff's husband's auto insurance company. Dr. Wu stated that plaintiff complained of neck and back pain after the car accident, but she remained capable of performing routine household chores. (A.R. 613-14). On November 7, 2005, plaintiff's treating physician noted that plaintiff appeared to be embellishing her symptoms. (A.R. 469).

On May 4, 2006, Dr. Thakur partially completed and signed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" in support of plaintiff's claims for DIB and SSI benefits. (A.R. 335-38). Dr. Thakur stated that plaintiff was limited to occasional lifting of less than ten pounds and was limited to standing and/or walking less than two hours in an eight-hour workday. She indicated that plaintiff was limited to sitting less than six hours in an eight-hour workday. When Dr. Thakur was asked for the medical/clinical findings that supported these conclusions, her response was a non-specific "refer to info[rmation] provided." Dr. Thakur stated that plaintiff should never climb ramps, stairs, ladders, ropes or scaffolds, balance, kneel, crouch, crawl, stoop. (A.R. 336). She did not identify any medical or clinical findings supporting these conclusions. She stated that plaintiff was limited to "occasional" reaching, handling, fingering, and feeling. No medical or clinical findings were offered in support of these conclusions. (A.R. 337). Dr. Thakur did not identify any clinical or medical findings supporting environmental restrictions. (A.R. 338).

Medical expert David G. Brown, M.D., reviewed the entire medical record and gave sworn answers to interrogatories posed by the ALJ regarding plaintiff's functional restrictions. (A.R. 616-23). The ALJ found that the restrictions determined by Dr. Brown were better supported and more consistent with the record as a whole than Dr. Thakur's opinions. (A.R. 20, 22).

Dr. Thakur's opinions regarding plaintiff's functional restrictions were not supported by objective test results. Thus, the ALJ did not commit error when he declined to give Dr. Thakur's opinions controlling weight.

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Turner v. Commissioner*, 267 F. App'x at 460; *Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008). Plaintiff's argument that the ALJ's opinion failed to "set forth any of the factors" is simply wrong. The ALJ expressly evaluated the opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSR 96-2p. (A.R. 20). The ALJ found that the extreme functional restrictions proffered by Dr. Thakur were not well supported, were inconsistent with the opinions expressed by plaintiff's other treating physicians, were inconsistent with the opinions expressed by Dr. Brown, and were inconsistent with the record as a whole. Plaintiff criticizes the ALJ for relying on the opinion of a non-treating medical expert. However, in this instance, the ALJ clearly explained why he gave less to Dr. Thakur's opinions than he gave to Dr. Brown's opinions. *See Berry v. Commissioner*, No. 07-4083, 2008 WL 3271255, at *3 (6th Cir. Aug. 8, 2008). I find no violation of the treating physician rule. The ALJ's decision satisfies the procedural requirement

of giving "good reasons" for not giving controlling weight to Dr. Thakur's opinions.  *See Smith v. Commissioner*, 482 F.3d at 875-76; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

**2.**

In a related argument, plaintiff criticizes the ALJ for "failing to note" that Dr. Thakur was board certified.  (Plaintiff's Brief at 11-12).  This argument is based on evidence that plaintiff submitted after the ALJ's decision in support of her application for review by the Appeals Council (*Id.* at 12 (citing A.R. 661-65)).  Plaintiff invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence.  For fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "for further development." (Plaintiff's Brief at 20).  An

identical request appears in the last sentence of plaintiff's reply brief. (Reply Brief at 2, docket # 17). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357. Plaintiff's brief contains no developed argument supporting a request for a sentence-six remand. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also United States v. Simms*, No. 07-5561, 2008 WL 4148525, at * 2 (6th Cir. Sept. 10, 2008); *Anthony v. Astrue*, 266 F. App'x at 458.

Assuming *arguendo* that the issue has not been waived, plaintiff is clearly not entitled to a sentence-six remand. Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried her burden with regard to any of these statutory elements. Dr. Thakur's resume is not new. *See Hollon*, 447 F.3d at 483-84. Plaintiff has not shown "good cause" for her failure to

present this evidence to the ALJ. *Id.* Given the inconsistencies between Dr. Thakur's progress notes and her level of advocacy in support of plaintiff's disability claims, I am not persuaded that the introduction of evidence that Dr. Thakur is board certified would have reasonably persuaded the Commissioner to reach a different conclusion with regard to whether plaintiff was disabled on or before January 25, 2007. *See Foster v. Halter*, 279 F.3d at 357. Plaintiff has not shown that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.

**3.**

Plaintiff's remaining argument is that the ALJ failed to properly evaluate her fibromyalgia "and the complaints arising therefrom in accordance with *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817 (6th Cir. 1988)." The Sixth Circuit's *per curiam* decision in *Preston* did not create separate rule for the evaluation of a claimant's credibility based on a diagnosis of fibromyalgia. "The sole issue [in *Preston* was] the date of onset of disability . . . ." *Id.* at 818. Alice Preston limited her appeal to that portion of a district court's judgment holding that her onset of disability was March 26, 1986. *Id.* at 815. During a supplemental hearing conducted on remand in March of 1986, the claimant's treating physician testified that he "had recently diagnosed Preston's primary impairment as fibrositis," then a newly recognized disease. *Id.* at 817. "Importantly," the treating physician's testimony had "related back many of his 1986 findings to his earlier findings of February and August of 1984." *Id.* at 819. The Sixth Circuit reversed the district court's decision and held that Ms. Preston's onset of disability was February 15, 1984. *Id.* at 820.

"[T]he process for diagnosing fibromyalgia involves testing for tenderness in focal points and ruling out other conditions." *Rogers v. Commissioner*, 486 F.3d 234, 244 (6th Cir. 2007). The symptoms of fibromyalgia are largely subjective:

> [F]ibromyalgia, also known as fibrositis[,] is a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n.2 (6th Cir. 2008)(quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003)). "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Infantado v. Astrue*, 263 F. App'x 469 (6th Cir. 2008); *Arnett v. Commissioner*, 76 F. App'x 713 (6th Cir. 2003). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Disability is determined not by the presence of impairments, but rather the functional restrictions placed on the individual by those impairments. *Huffaker*, 271 F. App'x at 500. "While the diagnos[is] of ... fibromyalgia may not lend [itself] to objective clinical findings, the physical limitations imposed by the symptoms of such illness[ ] do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 16-17 n. 5 (1st Cir. 2003). "One method of objective proof of disability, for instance, is a functional capacity evaluation, a reliable and objective method of gauging the extent one can

complete work-related tasks." *Huffaker*, 271 F. App'x at 500; *see also Rose v. Hartford Fin. Servs.*, 268 F. App'x 444, 454 (6th Cir. 2008)(noting the important distinction between requiring objective evidence of fibromyalgia and requiring that there be objective evidence of the condition on an individual's functional capacity).

Plaintiff disagrees with the ALJ's credibility determination regarding her subjective complaints. This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). I find that the ALJ's credibility determination (A.R. 21) is supported more than by substantial evidence.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  September 23, 2008          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).